Ron, this is the first case of the morning. Call 209-963. People of the State of Illinois v. Raimundo Gonzalez. On behalf of the Appellant, Mr. Jed Stone. On behalf of the Attorney, Ms. Victoria Joseph. Mr. Stone, good morning. Good morning. May it please the Court. My name is Jed Stone and I represent Raimundo Gonzalez, who is your appellant. The allegations of sexual abuse in this case are false. C.G., the child complainant, thought that by raising a complaint of child sexual abuse, she could get out from the thumb of a father who was restrictive and not letting her say out at nights and be with friends. And so she and her sisters concocted a story. She told the police that her father had sexually assaulted her. And then later her sisters came forward and said it was a false story and she in fact testified at trial that while she had said these things to the police, they were false. Raimundo is not guilty of this crime and has languished in the Illinois Department of Corrections under a sentence of 29 years. There's a problem with the trial of this case. And the problem is that defense counsel was told by the state that Raimundo had confessed and had never denied the charges against him. That was false. As this court well knows, Supreme Court Rule 412 requires the pre-trial disclosure of any statements of the accused. In this case, the statement of Raimundo to a DCFS investigator was not disclosed until the third day of trial. After a hearing on a motion to suppress, after the trial had begun, after a jury had been selected, after opening statements had been made, after the first witness had testified, then and only then did the state come forward with what it had already had, always had, in its possession. A statement by Raimundo Gonzalez to Ed Martinez, I never sexually assaulted my child. I'm not guilty. Mr. Stone, why wasn't the trial court's remedy sufficient? Because the trial court's remedy was to adjourn for a while and let the defense counsel interview Mr. Martinez and any other of the police witnesses he wanted to. That didn't allow for the defense lawyer to thoughtfully react to this alarming new evidence. Well, did the trial judge put any time limit on it? From what I've seen of the record, there's no real time limit. He said, you need to do this, you go and do it. And defense counsel came back and said, I've done it. Well, and he asked for a mistrial and said he was taken by surprise and said he hadn't incorporated the denial into his defense strategy. And how would he have done that such that it would have altered the situation? If he had known that his client had denied the allegations at the motion to suppress hearing, he might have been permitted to cross-examine the detective about the denial, not as substantive evidence of innocence, but as evidence of a pattern of coercion in advancing. My understanding is prior consistent statements aren't admitted into evidence are not relevant or material unless there is a claim that it's a recent fabrication. If the state never claimed that it was a recent fabrication, why would this even be relevant or material? As defense counsel was investigating his case, it was essential that he knew that his client had denied this to authorities. But his client testified at the motion to suppress that his client testified that when he was initially confronted, he denied the allegations. But there was no evidence to support that. There was no reason for the defense lawyer to believe it other than what his client had said. His hearsay self-serving statements are not evidence regardless of what the circumstances are. It may not be evidence, but it's certainly an essential investigatory lead for a defense lawyer to look at in order to prepare for a motion to suppress hearing. You're absolutely right, Justices. He couldn't have introduced his statement to the defense, could not have introduced his statement to Martinez before the jury at trial. That's 100% true. But you've got to understand that knowing that your client had denied it to an investigator and that there was a report about that is an essential and critical piece of evidence in the preparation of a case for trial, in the preparation of a case for a hearing on the suppression motion. The role of DCFS in this case was to interview the children. Yes. And if that was their role in the child protection aspect of their role, how was it that Martinez's notes were required to be in the hands of the state prior to trial anyway? Well, because a police officer was present, because it's in the prosecution's file, and because it's a statement of the accused. And Supreme Court Rule 412 doesn't say statements of the accused in the possession of the state only given to police officers. It says all statements of the accused. And I respect that view that the prosecution has an obligation to discover statements if that's reasonably expected. But how do you distinguish what happened in this case from In Re C J, the Illinois Supreme Court, which said that the DCSF workers, unless they are assisting the state in the investigation, the state is not required to have those reports in their possession prior to trial. Well, but they did have it in their possession, and here they were assisting the state. The evidence was that Martinez was interviewed the day before the notes were disclosed because he was going to translate the victim's statements, correct? Yes. So that's the way the notes were discovered, correct? That's how the prosecutor came. I mean, I don't think a prosecutor can wait until mid-trial to interview a witness to discover the absence or presence of evidence. That's your view regarding trial preparation, and all lawyers should prepare their witnesses prior to trial. I would hope. The issue is whether or not under In Re C J those notes were discoverable in the first place, correct? Yes. In this case, and of course when you suggested that DCFS's sole role is to interview children victims, that of course isn't their sole role. Their sole role is to investigate acts of abuse on children, and that includes and has always included interviewing potential perpetrators, witnesses, parents, siblings. And in this case, that's precisely what Mr. Martinez did. He interviewed more than just the child. He interviewed family members, and he interviewed the accused, and he did it in the presence of a Oaxacan police officer. This was a Oaxacan investigation. There's no doubt in my mind but that it was part of the investigation into the prosecution of Raimundo Gonzalez, and there's no doubt in my mind that the state had an obligation to turn that over pre-trial. In fact, there was no doubt in the trial judge's mind who found that it was a discovery violation, and it was really no doubt in the appellate prosecutor's mind where in her brief she admits that there was late disclosure, that it was favorable to the defendant, and that the state at page 16 of her brief had suppressed the evidence. This is not an inadvertent discovery of a defendant's statement. This was, as the state suggests at page 16 of its brief, a suppression of exculpatory evidence by the prosecution and a clear violation of the Supreme Court rule. Now, why wasn't there not simply an adjournment but a mistrial? Which I think is the appropriate remedy where a critical piece of evidence, the statement of the accused, is not disclosed pre-trial. But that's not even the heart of this defense, this appeal, is it? The heart of this defense is not only the duty to disclose, but also the question of whether or not there even was a corpus delecti of a crime in this case. The law correctly distrusts extrajudicial statements, statements to police officers. And the law has always required that when a confession is introduced at trial, the corpus delecti of the crime requires that confession plus something more. Plus what more? Plus another witness? Perhaps. There was none in this case. Plus a physician or a lab technician? There was none in this case. Plus an item of clothing that was ripped or torn? There was none in this case. There was no credible evidence other than a witness who said, I lied when I talked to the police, and a confession. That ought to be deeply troubling. In a rule of law where the burden is proof beyond the reasonable doubt, it ought to be deeply troubling that there is no evidence in this case other than extrajudicial statements to police officers. Doesn't 11510 specifically provide for the admissibility and the weighing of such evidence based upon a U.S. Supreme Court decision regarding out-of-court statements if certain badges of reliability or foundation has been established? 11510 surely says that where a statement that narrates or describes an event about which the witness has personal knowledge is different from their in-court testimony, that that out-of-court statement is admitted as substantive evidence. There is no question about that. That is settled law. What is unsettled and unsettling is what happens when the witness says, I lied when I said all those things. Not that the car was green and she now says that the car was blue, not that it was the 14th and she now says it was the 22nd, but she says, I lied. That's exactly what happened in People v. Sargent, the Illinois Supreme Court case that you supplemented the record with in this case. Yes. So you're asking us to depart from Sargent? No, I'm asking you to say that under the facts of this case, the State did not prove its case beyond a reasonable doubt. I'm asking you to say that under the facts of this case, when a girl says, I lied, her sisters say in post-trial affidavits, she lied and we knew she was lying, and her father says, I never said that to Dr. Detective Capaluti, I am not guilty of this crime, that the underpinnings of this prosecution are so infirm that you should reverse. You didn't challenge the admissibility of the 11510 statements that it's not raised, wasn't raised at trial and is not raised in the pleadings. It wasn't raised at trial. Have you thought about raising ineffectiveness of counsel in so far as trial counsel and so far as failing to attack? I would, of course, consider raising ineffective assistance of counsel in a post-conviction petition should we ever get there. I didn't think that it was within four corners of the appeal. Was it within four corners of the record? In my judgment, it was not. In my judgment, it's a post-conviction issue. We're hoping never to get there. At trial, to go back a moment, at trial your client testified. He did. You mentioned this role of Martinez, that Martinez was interviewing people in the presence of police officers. Wasn't the evidence that there had been a discussion before going to the home that all the interviews would take place at the police department? There was a discussion after Raimundo talked to Martinez that they would send it to the police department for further interviews. And at trial, your client denied having a conversation with the police at the house? He did. So there was no conversation other than just a brief greeting? Well, there was whatever Martinez says he said to him, and Martinez wasn't the police officer. Which under the law, what's the theory of admissibility of that statement? Mr. Justice Burkett, it is not a question of whether or not Mr. Gonzalez's statement to Martinez was admissible at trial. It is a question of whether or not it was discoverable before trial, and whether or not once discovered, defense counsel could use that in his investigation and preparation of the case. I've tried many cases, as have you. We always like to know what the facts are as we're preparing a motion to suppress. And when the government tells me, your client has never denied this, he has always admitted to it, he is lying to you when he says he didn't do it, it's very uncomfortable to find out three days into a trial that my client had been telling me the truth, and in fact he had denied it. Well, just because he's quote-unquote made prior consistent statements does not ipso facto establish its veracity or accuracy. Of course not. And that's what you just said, and that is not true. You said that based upon the fact that he supposedly said other things, that it means that what he said was true. No, it just means that what he said was that he did in fact make other statements in denial, but it doesn't necessarily mean that he's still not guilty. Of course not. Okay. The way you said it made me think that you were saying the prior consistent statements have some probative value. Here's the probative value, and I had hoped that I had made this clear, permit me to make it clearer. When the prosecutor says to the defense, your client has confessed and has given no contrary statements to the confession, it is probative in my investigation of the case to learn that the prosecutor is wrong, either intentionally wrong or ignorant of the fact, that my client had made a prior statement denying the allegations. I think that's essential in the information I would want if I were preparing this case for trial, if I were cross-examining at a motion to suppress, not necessarily at the trial, but at a motion to suppress a detective who claimed that my client had confessed to him. One thing I'd like clarification if you could. Lopez was the name of the Waukegan police officer, wasn't he? Yes. Mr. Lopez does not speak Spanish, correct? I don't remember. That's what I remember from the record. I know that Detective Capaluti did. So if he didn't understand, pardon me, Spanish, unless he was told in English what was transpiring while he was present, I think it would be fair to say that he didn't know what was going on. And if he didn't know what was going on, then his presence there wouldn't necessarily be notice to the State. At least that seemed to be the implication of one of your comments earlier. His presence there was notice to the State that the accused and a DCFS investigator had talked about the case. He was there. Whether he understood Spanish or not, he had an obligation, Martinez had an obligation, the prosecutor had an obligation to turn over the exculpatory evidence pretrial. That's what I'm saying. But you're implying that somebody had to find out whether it was exculpatory because the police officer didn't know whether it was inculpatory or exculpatory, did he? We don't know. Okay. We don't know the answer to that question. And I'm not going to presume an answer this morning. What we do know is that an agent of the State, a DCFS investigator, knew that there had been an exculpatory statement and that that wasn't revealed until the third day of trial. That has to be a handicap for a defense lawyer. And it has to be the very kind of handicap that the Supreme Court rules sought to avoid. Surprise. Remember that the courts have said with regards to disclosure that it's not simply a requirement to avoid surprise, but it's also a requirement to allow for adequate preparation and to afford the defense an opportunity to investigate. That was not permitted in this case. If the motion is suppressed, did the defendant testify that he denied it previously? Yes. Then why wouldn't the lawyer at the time when the motion is suppressed, assuming he was present, make inquiry with his client outside of the courtroom or even inside the courtroom for that matter to find out what he was talking about? I can't account for that. There may be language difficulties, but absent that, I can't account for that. And language difficulties are things that we encounter as lawyers all the time. What I can account for is that the failure of the defense counsel to do or not do something does not relieve the prosecution of its obligation under 412. I don't have a problem with that. You're wrong, so make a right. Your obligation here, though, is to demonstrate prejudice that the outcome may have been different had the disclosure been made. I think my obligation here is to tell the court that unlike Brady violations where prejudice is required by the law, a Supreme Court Rule 412 violation almost presumes a trial error. It presumes a trial error because the disclosure that is required by law, the disclosure to reveal pretrial any statement of the accused, was not done until three days into the trial. The defense claimed he was surprised and reasonably would have been surprised by that. It did not allow for an adequate opportunity to prepare for trial, and it did not allow for an adequate opportunity to investigate the newly disclosed exculpatory statement. I think my time is up. I have one other question about corpus delecti. We have a confession and then evidence that there was a denial. We have the trial statement and then we have a recantation. How do you deal, though, with the issue that we then have on review, the question of could any rational trier of fact found your client guilty? I mean, that is a, you know, there are lots of definitions in there that are not provided anywhere in the statutory authority. How do you deal with that standard? Because it is a very difficult standard. Of course it is. But it is not an insurmountable standard. In this case, a rational trier of fact should have said we distrust extrajudicial statements. We look for some form of corroboration other than what police officers tell us other people have said about the facts of this case. And absent anything, no matter how slight, to borrow a phrase from another area of the law, no matter how slight, there is nothing to corroborate this case other than the extrajudicial statements of the defendant and the extrajudicial statements of the complainant, which she explained were lies. That ought to be troubling when a man sits in prison charged with a sex offense and is doing 28 years. Well, it may have been, but what's to say that the trier of fact did not believe the recantation? Saw the recantation, saw the body language, saw everything that happens, didn't believe it. They may or may not have believed it. We'll never know what the jury's thought process was. The problem is that the law requires that there be a confession plus some evidence. And in this case, there was no plus some evidence. Even if the jury said we don't believe her recantation, there was no plus some evidence. Any other questions? I do have an opportunity to make rebuttal. Thank you. Good morning, Your Honors. Counsel, may it please the court. Justice McLaren, I did want to direct you to the record on page 151. That was where Detective Lopez was discussing that he did not understand Spanish and did not question Martinez about the statements. What obligation, though, does he have? I mean, this is a serious offense. Mr. Stone has made it quite clear in his argument and in his briefs. And it's a serious penalty. Don't you think there's some obligation of your police officer to question the DCFS caseworker or ask something when there is a potential defendant saying something? The people have not contested that there was a discovery violation in this case, Your Honor. What we are arguing is that the defendant has not shown prejudice based on the remedy the trial judge gave as far as a sanction for that discovery violation. All right. Under 412, do you think, I mean, is there a remedy? Mr. Stone seems to think it's a mistrial. There was a remedy, Your Honor, and the defendant took part in part of that remedy and declined to decline the other two offers that were made by the court. Here, the defendant does have the burden to show prejudice. That is People v. Hood at 213, Illinois 2nd at 258. The defendant does have to show prejudice here. The trial judge was in the best position to determine the possible sanction, which could be permitting discovery, offering a continuance, excluding the evidence, or granting a new trial. Here, the trial judge allowed the defendant to question four witnesses involved in the taking of the defendant's statements. He took that time and learned that most of them were not aware of the denials, including Detective Cavalletti, was not aware before he questioned the defendant that a denial had been made. Then the trial judge came back and said, Would you like to put these officers and DCFS workers on the record outside of the presence of the jury and have their answers on the record? The defense counsel declined that offer. Further, the trial judge offered a continuance. So if the defense counsel needed more time to investigate and develop a defense, he could take that time. He declined that offer as well. When the defense counsel asked for a mistrial, did he indicate why it was necessary other than the foul, so to speak? The failure to disclose was a foul. The question is, why was a mistrial required as a minimum or the appropriate measure of relief? Did he indicate why? He indicated, this is on page 149 of the record, the matter had completely taken me by surprise. It altered my trial strategy as well as my client has been trying to tell me all along and I am asking for a mistrial. He believed it was trial by ambush and that he would have gone about something different on the motion to suppress. But the language that both defense counsel here today continues to use is that he might have been permitted to do something or it might have turned out differently. The standard is, is there a reasonable probability that the motion to suppress would have been different or the outcome at trial has been different? Using words like might does not establish a reasonable probability that would have been different. Why does the state concede that there was a discovery violation in light of NRACJ? Your Honor, unfortunately I am not familiar with NRACJ. That's the only Supreme Court case that said that unless the DCFS case worker is intimately involved or involved in the investigation of the case for the state, that they are not an investigative body or an investigative arm of the state's attorney. And therefore the notes are not required to be produced pursuant to Supreme Court Rule 412. Adding on to that, how would a police officer who doesn't understand Spanish be able to relate that it's exculpatory if he doesn't know what transpired, even though maybe it might have been reasonable for him to ask? As far as the record in this case, it shows that Lopez was not aware that he had made an exculpatory statement. He was not aware of Spanish. Would it have been reasonable for him to question? Yes. Are there any donuts in the air? Could have been. I think because the officers and DCFS were working so closely together in this case, even due to the lack of language understanding, the nature here, the people are not challenging the trial judges finding that there was a discovery violation because of the presence of the officers. What about Mr. Stone's argument that the state should have discovered these notes far in advance of trial, that there should be some sanction for the late preparation, even if mistrial is not appropriate? I think in this case it was, should they have read all the notes? It could be. I think the preparation here of Martinez is directly in correlation with the testimony of the daughter at trial. She had fled the country immediately or shortly thereafter making the statements and did not return until trial. So until, based on Martinez's testimony, it was almost all related to her testimony. So the preparation of Martinez after Claudia gave her testimony was not that unreasonable in this case. Now, whether they should have read every single DCFS report that came through, I can't necessarily speak to what the assistant in this case, their preparation. Did the assistant actually have Martinez's notes prior to the time? I don't believe the assistant did. So it's hard to read something you don't have. Yes. That they were given, they were never, yes, I believe at 143, they were never in the state's possession. And at trial, the defense never questioned that the people were, the state's attorney's office was not aware of these statements until trial. Shouldn't the defense attorney have subpoenaed those despite, regardless of what the state did, knowing that the victim had made statements to a DCFS worker? Shouldn't the defense lawyer have issued a subpoena for the DCFS notes independent of the state's discovery obligation? The defense counsel could have, but as that is part of the state's duty, it likely here falls more heavily on the people's duty rather than the defense counsel's duty. And since ineffective assistance of counsel has not been raised in this case. How does a denial actually exculpate anybody? It doesn't. Because there are plenty of times when you can make... I think a statement that I was in the hospital having my kidney removed might be an exculpatory statement because it indicates that you were not in a location or something that would indicate something relating to innocence other than a denial. I'm having a problem with the concept that a denial is exculpatory. It may not be incriminating, but I'm not convinced that a denial establishes lateral guilt, and that's what I thought exculpate means. To prove one's innocence? It may be consistent with that theory, but I don't know that it works. Especially if it's inadmissible. It's inadmissible, and I believe the people cited to cases where there are examples of defendants coming in at the beginning of a statement, denies making the statement, and later within the statement admits to it. Well, there are two points, are there not? One is whether there was discovery that he was entitled to, and then whether or not it was exculpatory for purposes of Brady, correct? Correct. So there's a dual argument being raised in that there was a Brady violation and there was also a discovery violation. That is correct, Your Honor. So what's your position relative to the Brady argument? Well, the Brady argument ties back also into the failure to be able to show prejudice, is that to establish materiality, you have to show that the denial would have put this whole case in a different light, and it does not do that here. As far as it being fully exculpatory, it doesn't necessarily exculpate the defendant. The trial court offered to take more time. Yes. The defense counsel also offered to, defense counsel, if you have an instruction or some other law, I'm happy to entertain it, correct? I know he offered more time. There might have been an instruction offer. I don't recall. No issues are raised regarding the instructions in the case. No. The people also will briefly address the reasonable doubt issue. As Justice Burkett pointed to, the people argue, Sergeant, is on point here, that a confession, yes, must be corroborated. It must be corroborated with independent evidence that tends to confirm or strengthen the confession. In Sergeant, you had a child who made extrajudicial statements, I don't remember if it was to an officer, a CFS worker, counselor, that the defendant inserted his finger into his butt, and the child got on the stand and said, I don't remember the defendant ever doing anything that I didn't like. The Illinois Supreme Court found that the combination of the child's prior statement and the defendant's repudiated confession was overwhelming evidence of the offense, at least on that one count. So in this case, they're not challenging the victim's statements, were improperly admitted under Section 115.10. As such, it was substantive evidence of the offense. Her description in those prior statements of the duration, the time frame, the activities that took place corroborated the defendant's confession. The people only note that in the defendant's reply brief, that there was an issue taken with the people's use of the word tend to, that's directly out of the Supreme Court in both Sergeant and Furby, that the evidence must tend to corroborate in order to use both the confession with the other evidence, which here was the other statements. And the people, as this court has decided in Zizzo, it's the Collins standard that applies. And as the Collins standard applies, it was the jury's duty to weigh which statements they believed. They saw the witnesses on the stand. They heard from the officer the prior statements she made. They saw her give testimony as to why she claimed she told the officers the story she gave. The jury saw her, they heard her, and they did not believe her testimony on the stand was truthful. They chose to believe her prior statements. Those statements could then corroborate the defendant's confession, and together they provided evidence to stand a reasonable doubt to support his conviction. Are there any other questions? Thank you. Mr. Stone? Thank you. Ed Martinez was listed as a prosecution witness. The state knew they were going to call him. There is a growing realization in the law that there are such things as wrongful convictions of innocent people. How do they happen? I think they happen when prosecutors don't prepare their cases. I think they happen when defense lawyers don't prepare their cases. But when witnesses are prepped, not a month before trial, but after the trial has begun, and witnesses, it is discovered, have in their possession statements of the accused, that's a prosecution error. That's why the judge found a discovery violation in this case. That's why you should find a discovery violation in this case. And at a minimum, you should grant Rimundo a new trial. The court must elect that issue. Counsel, I believe the standard review is whether or not the remedy for the discovery violation was an abuse of discretion. Is it not? That is the standard of review. Okay. Because the way you said your last statement, it sounded like it was de novo, and it's like we should declare this a violation and we should grant a mistrial and essentially give a new trial. And I didn't want myself to misunderstand you if that wasn't what you meant, because that's what I garnered from what you said. That is not what I meant. Absolutely, it is an abuse of discretion standard, unless you find that it was a due process violation. The point is that this trial lawyer said to the judge, I think, frankly, I am taken by surprise, and I can understand why he would be, and I would hope that you could understand why he would be taken by surprise, when in the third day of trial, the state has an exculpatory statement of the accused. Now, exculpatory, Justice McLaren, with all due respect, is not a narrow definition. Mr. Stone, again, explain to us how that disclosure, had it been a week before, a month before, two months before trial, how would it have affected the outcome of this case? It would have affected the outcome of the suppression hearing, because at the suppression hearing, you have to say that this was a closely considered case, even at the suppression hearing. The trial judge was a different judge. It was Judge Stride at the suppression hearing. And the trial court was Judge Shaines. It was. Judge Shaines made the record very clear that he discussed this disclosure with Judge Stride, who indicated to him that it would not have affected the outcome. In other words, Judge Stride's finding, which we have, was that he believed the police officer over your client. How would the fact that your client had earlier denied, and there was some record of his denial, when, in fact, he testified at the motion to suppress, that he initially denied involvement, how, explain to us again, how it would have affected the outcome? I think it would have affected the outcome of the suppression hearing, because the suppression court judge would have heard evidence that there had been a denial, and that his will was then overborne. That couldn't have been tried that way at the suppression hearing, because the defense counsel believed that the evidence was that the defendant admitted to it, and never denied it to the police officers. That was what the evidence was. That's what the trial, the suppression judge, believed. If the suppression judge had learned that the accused had denied his involvement in this crime, and that only after Detective Capaluti had talked to him, and then had this strangely reported event where the defendant put his head down and his eyes welled up with tears in Detective Capaluti's version of what happened in the interrogation room, if the trial court, the suppression court, had known that there had been a denial, in addition to an unsigned report, in addition to a written report that had to get rewritten for some undisclosed reason by Detective Capaluti, I mean, there's plenty in this case to cause us to wonder about Detective Capaluti's testimony. And excluding from that mix the fact that the accused had denied his involvement in the crime is critical to the way the defense could have presented this case had it been timely disclosed. I hope that's clear. Again, the trial judge, the judge who heard the motion to suppress, discussed this with Judge Shaines, and your client testified in the motion to suppress that he initially denied involvement. I'm aware of both of those facts. Any other questions? Thank you, sir. Your time is up, and we will take the case under advisement and render a decision.